SECURITY BANK OF NEW YORK V. NATIONAL BANK OF COM-
MONWEALTH, appellant.

*Appeal — discretionary order affecting substantial right appealable — Definition
of " substantial right "—Judgment — when it will be opened —Affidavit of merits
— National bank — exists after appointment of receiver under national cur-
rency act — Parties.*

A discretionary order which affects a substantial right is appealable to the gen-
eral term. An order denying a motion to set aside a judgment affects a sub-
stantial right.

The term " substantial right," as used in the Code; includes all positive mate-
rial and absolute rights as distinguishable from those of a merely formal or
unessential nature.

The president of an insolvent national bank, the assets of which had been
taken possession of by a receiver under the national currency act, was
served with a summons in an action against the bank. He did not inform
the receiver or any of the directors of the bank of the service and allowed
judgment to be made by default. The receiver, within a month after the
judgment was entered and less than that time after receiving notice thereof,
obtained an order to show cause why the judgment should not be opened.
This application was supported by affidavits of the book-keeper of the bank
that no such indebtedness appeared on its books, and of ten of the directors
that they had no knowledge of the existence of such debt and some evidence
that it consisted of money borrowed by the president for his own use. *Held,*
(1) that the application to open the default was made with reasonable dili-
gence ; (2) that the affidavit of the book-keeper and directors constituted a
sufficient affidavit of merits ; and (3) that the facts shown entitled defendant
to have the default opened.

*Held,* also, that notwithstanding the appointment of a receiver, the bank con-
tinued to exist. The action was properly instituted against it and the de-
fense should be made by it.

APPEAL from an order at special term denying a motion to open
a judgment against defendant entered by default. The action was
brought by the Security Bank of the city of New York against
The National Bank of the Commonwealth, to recover for a loan.
A judgment was entered by default, and this motion was made upon
the application of the receiver of the defendant appointed under
the national currency act to open the same. The necessary facts
fully appear in the opinion.

*H. Edwin Tremain,* for appellant.

*Arnoux, Ritch & Woodford,* for respondent. The order was not appealable. *Fort* v. *Bard,* 1 N. Y. 43; *Spaulding* v. *Kingsland,* id. 426 ; *Lewis* v. *Graham,* 16 Abb. 126; *Millard* ᴛ. *Van Ranst,* 17 id. 319, note ; *Muldenor* v. *McDonough,* 2 Hilt. 46 ; *Bolton* v. *De Peyster,* 3 Code R. 141 ; *Churchill* v. *Mallison,* 2 Hilt. 70 ; *Ramsey* v. *Gould,* 4 Lans. 476 ; *Foshay* v. *Drost,* 4 Bosw. 664 ; *Leighton* v. *Wood,* 17 Abb. 182 ; *Mead* v. *Mead,* 2 E. D. Smith, 223 ; 4 Wait. Pr. Sup. Ct., § 15. The receiver has no standing in court. *Bank of Bethel* v. *Pahquioque Bank,* 14 Wall. 383; 2 Bright. Dig. 63 ; 13 U. S. Stat. at Large, 115.

DANIELS, J. A receiver was appointed, under the national currency act (13 U. S. Stat. at Large, 115), of the books, assets and records of the defendant, as an insolvent national banking association, in September, 1873, and he entered upon the discharge of his duties in that capacity. After that, and on the 4th of March, 1874, the summons in this action was served upon George Ellis, the defendant's president. And he, to use his own language concerning his singular and extraordinary conduct following the service, supposing that his connection with the bank ceased by the appointment of the receiver, "took no notice of any papers that were served upon him, as an officer thereof, and did not do so in regard to the summons herein, nor did he inform said receiver of said service." This is the sworn statement of the defendant's president. And it so completely describes his utter want of moral, as well as official sense of accountability, as to dispense with all further attempts at characterizing his conduct. The consequence of this inexcusable neglect to inform the receiver of the service of the summons was, that on the 17th of April, 1874, a judgment was entered in favor of the plaintiff, and against the defendant, for nearly $57,000, and the receiver swears that his first knowledge of its recovery, or of the commencement of the suit, was on or about the 21st day of April, 1874, when a transcript of the judgment was presented to him by the plaintiff's attorney.

On the 11th of May, 1874, an order was procured at the instance of the receiver, and some of the defendant's directors, who were actuated by a different sense of duty from that which impressed its delinquent president, for the plaintiff to show cause why "the judgment should not be set aside and the defendant have leave to answer the complaint," and on the twenty-sixth of that month the

motion was heard and denied, with liberty to renew it, on further affidavits. It was renewed again, on additional affidavits, on the 16th of June, 1874, and then finally denied.

The present appeal is from the order then made, and it is resisted strenuously, on the ground, among other reasons, that the order is not appealable.

The particular reason assigned in support of that objection is, that the order was one of a discretionary nature, and that it most certainly was, but it does not follow from that circumstance that the order is not appealable, for the Code renders all orders appealable to the general term, which either affect a substantial right or are made in summary applications after judgment, and affect a substantial right. Code, § 349, subd. 3, 5. This right is not qualified by the fact that the order shall not be one of a discretionary character. No such qualification has been attached to the right of appeal taken to the general term. In this respect the appeal differs from that which may be taken to the court of appeals, for when an appeal is taken from an order affecting a substantial right to that court, the order, to be appealable there, must be one which does not involve any question of discretion. Code, § 11, subd. 4. The distinction existing between the two courts in this respect is clear and decided, and the law making it provides for an appeal to the general term from an order affecting a substantial right, even though it may be of a discretionary character. *People* v. *N. Y. Cent. R. R. Co.*, 29 N. Y. 418; *Matter of Duff*, 41 How. 350; *Livermore* v. *Bainbridge*, 47 id. 354.

This term "substantial" had no special legal signification when it was incorporated by the legislature into the Code for the purpose of describing the cases in which appeals from orders could be taken to the general term. For that reason it must be construed according to its popular and usual signification, and understood in that manner it includes all positive material and absolute rights as distinguishable from those of a merely formal or unessential nature. An obligation imposed upon a party, by an order subjecting him to the payment of a sum of money, great or small, has been held to fall within this designation, of an order affecting a substantial right, and therefore appealable to the general term, even though discretionary. *People* v. *N. Y. Cent. R. R. Co.*, 29 N. Y. 421, 422.

That was the nature of the judgment recovered in the present action, and the order appealed from by the denial of a defense

imposes upon the defendant an actual positive obligation for its payment. As long as that order remains in force the obligation to pay is unqualified and irrevocable. Besides that the right to defend against a demand made in a court of justice by way of action is of a positive and substantial nature. It is one which has been secured with care and consideration in the administration of the law; so much so, that judgments recovered, without affording an opportunity for defense, have with great uniformity been held ineffectual and void. Wherever the principles of the common law have prevailed, and the general course of practice has been maintained, so as to secure the observance of that right in favor of parties, who have not forfeited it by laches or some other course of conduct, rendering it inequitable under the circumstances to afford relief, this power has been conferred upon the court in which the action may be pending, and not upon any exclusive term or branch of that tribunal.

It is true that the right of appeal from orders involving its exercise has often been denied on the mere ground that the order made was discretionary in its character. But as that reason is very clearly untenable, and has been so declared by authorities controlling in the action of this court, it is not necessary to refer, more particularly, to the cases in which that denial has been sustained. It is sufficient to say that under the exposition now given to the statute, and which is sustained by its terms and the authorities already cited, all orders affecting a substantial right are appealable to the general term, and the order appealed from, in this case, is one of that character. The power as already mentioned has been conferred upon the court, in which an action may be pending, upon such terms as may be just, at any time within one year after notice thereof, to relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect. Code, § 174.

The power, it will be seen from this reference, has been supplied in very general terms, but the circumstances rendering its exercise discreet and proper are not mentioned. They are, therefore, by another provision, left to be ascertained according to the preceding course and rules of practice. Code, § 469. And by them a party was always relieved from an excusable default, where he appeared to have merits in his favor, and the application was made promptly after the discovery of the default. For the purpose of showing

merits a sure and certain defense was never required. What was necessary for that purpose was a probable defense to the claim made, alleged by the party in good faith. And the usual evidence required of its existence was an affidavit of merits, which, under ordinary circumstances, was not allowed to be controverted, because of the danger of injustice resulting from such a mode of trial.

In *Hanford* v. *McNair*, 2 Wend. 286, affidavits were produced denying that the defendant had a defense, and by way of answer to them, SAVAGE, C. J., replied that "the court do not hear affidavits in opposition to an affidavit of merits." That as a general proposition still continues to be the law. But in cases where the good faith of the party may well be doubted, they may be received for the purpose of confirming the propriety of that doubt. And in such cases the court may go further and require a disclosure of the case, so far as to enable it to determine whether the application be made in good faith, and not for the simple purpose of delay. That is the common practice, and it is sanctioned by a moderate exercise of the discretion conferred upon the court. But still, where the application for relief from the default is promptly made, and no reason exists for suspecting the good faith of the applicant, it should uniformly be allowed to prevail. This was the course pursued when the rules of practice were applied with greater strictness than has been observed since the enactment of the Code of Procedure.

In *Davenport* v. *Ferris*, 6 Johns. 131, the motion to open the default was argued before the court in banco, and THOMPSON, J., declared himself in favor of setting aside a default "whenever the party swears to a defense on the merits, and no opportunity for a trial has been lost." VAN NESS, J., concurred for the same reason, and KENT, C. J., assented without giving any reason.

A similar motion was made in term time in *Tallmadge* v. *Stockholm*, 14 Johns. 342, where it was held that the court had adopted the general rule "that a default for want of a plea, though regularly entered, will be set aside in every case, on the payment of costs, where there is an affidavit of merits, and no trial has been lost." And the same rule was again declared by the court in *Packhard* v. *Hill*, 4 Cow. 55.

Under this rule the defendant was entitled to be relieved from the judgment recovered through the intentional misconduct of its presiding officer, and allowed to answer. For the application was

made with reasonable diligence after the discovery of the default, by the receiver to whose protection the law had confided the interests of the defendant and its creditors. The default was excused by showing the intentional concealment of the service of the summons, and the probability that the judgment had been recovered by the connivance and desire of the officer on whom the service was made.

The application was also supported by a proper affidavit of merits, an affidavit of the book-keeper that $50,000 of the plaintiff's demand was not credited upon the defendant's books, and the affidavits of ten of the defendant's directors that they had no knowledge or information of the existence of such a loan, and some evidence that it consisted of money borrowed for his own personal uses, by the person on whom the summons in the action was served.

Although the affidavits and proofs of the plaintiff used on the motion tended to show that the loan was made to its president, for the defendant, the case still indicated that the liability was contested in good faith, and with a probability at least, that the receiver and the directors co-operating with him, might in the end prove to be successful in the defense of the action, and that probability was in no slight degree. sustained by the misconduct of the defendant's president. For it afforded good ground to suspect, that he concealed the service of the summons from the other officers of the defendant, and from the receiver then in charge of its books, records and assets, for the purpose of charging such assets with the payment of a debt owed solely by himself.

The bank continued to exist notwithstanding the appointment of the receiver. The suit was therefore properly instituted against it, and the defense should accordingly be made by it. *Bank of Bethel* v. *Pahquioque Bank*, 14 Wall. 383. The order appealed from should be reversed with $10 costs, and disbursements on the appeal to the defendant and appellant, and an order should be entered setting aside the judgment and allowing the defendant within ten days after notice of the order to serve an answer to the complaint, on payment within that time of $10 costs of opposing the motion, and the disbursements made on the entry of the judgment.

*Ordered accordingly.*